Shana E. Scarlett (SBN 217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

Steve W. Berman (*pro hac vice forthcoming*)
Robert F. Lopez (*pro hac vice forthcoming*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
robl@hbsslaw.com

*Attorneys for Plaintiff and
the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| JOHN SOLAK, a New York resident, on behalf of himself and all others similarly situated,<br><br>                                Plaintiff,<br><br>       v.<br><br>APPLE INC., a California corporation,<br><br>                                Defendant. | No. 5:18-cv-123<br><br>CLASS ACTION COMPLAINT FOR TRESPASS TO CHATTELS, VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW, FRAUDULENT MISREPRESENTATION, AND QUANTUM MERUIT TO RECOVER SUMS BY WHICH DEFENDANT HAS BEEN UNJUSTLY ENRICHED<br><br>**DEMAND FOR JURY TRIAL** |

**TABLE OF CONTENTS**

<u>**Page**</u>

I.      INTRODUCTION ................................................................................................ 1

II.     JURISDICTION ................................................................................................. 2

III.    VENUE .............................................................................................................. 2

IV.     PARTIES ............................................................................................................ 2

        A.      The plaintiff ......................................................................................... 2

        B.      The defendant ....................................................................................... 3

V.      FACTUAL ALLEGATIONS ............................................................................ 4

VI.     CLASS ALLEGATIONS ................................................................................... 9

VII.    CAUSES OF ACTION .................................................................................... 12

COUNT I  TRESPASS TO CHATTELS ...................................................................... 12

COUNT II  VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW
          (CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*) ....................................... 13

        A.      Unfair prong ...................................................................................... 14

        B.      Fraudulent prong ............................................................................... 15

COUNT III  FRAUDULENT MISREPRESENTATION ............................................. 16

COUNT IV  QUANTUM MERUIT TO RECOVER SUMS RECEIVED BY
          UNJUST ENRICHMENT ................................................................... 18

VIII.   REQUEST FOR RELIEF ................................................................................. 19

IX.     DEMAND FOR JURY TRIAL ........................................................................ 19

1    For his complaint against Apple Inc., plaintiff alleges as follows on his own behalf and on

2    behalf of all similarly situated U.S. consumers:

3    **I.     INTRODUCTION**

4    1.    Apple markets its iPhones as premium products with remarkably fast processors and

5    epic performance.  Each year, millions of American consumers bite—so many, in fact, that they have

6    made Apple the most valuable company in the world.

7    2.    Like every vendor, Apple has duties of truthfulness and candor to its customers.  It

8    also has the duty not to purposely degrade the performance of its customers' phones, and certainly

9    not without their knowledge or permission.

10   3.    Yet Apple has violated these duties by arrogating to itself the right to throttle the

11   performance of millions of iPhones under at least three common conditions, such that its behavior

12   will likely affect millions of consumers.  What's more, Apple acted by misrepresentation and

13   deception.  Consumers did not know of, or consent, to Apple's decision to slow their devices.

14   4.    In this nationwide proposed class action, plaintiff seeks at least the following relief on

15   his behalf and that of the putative class:

16            a.    Monetary compensation for the unauthorized performance degradations to

17                  their devices;

18            b.    Monetary compensation for those consumers who bought new iPhones, often

19                  at the urging of Apple representatives, because they thought their phones were

20                  obsolete, not knowing that instead the slowdowns they noticed were caused by

21                  Apple—and without knowing that they could have spent far less money on a

22                  replacement battery instead;

23            c.    Monetary compensation for consumers who bought new batteries at any price

24                  for Affected Phones[1], and at any time, in an effort to avoid the performance

25                  degradations that Apple caused without their knowledge or permission;

26

27   ───────────────

     [1] These are the on iPhone 6, iPhone 6 Plus, iPhone 6s, iPhone 6s Plus, and iPhone SE.

28   CLASS ACTION COMPLAINT          - 1 -
     Case No. 5:18-cv-123
     000700-11 555555 V1

d.     Monetary compensation for those who purchased a new Affected Phone based at least in part on Apple's promises and representations of performance and reliability, which representations Apple made after it had designed and released its performance-throttling iOS feature, such that they were false given Apple's knowledge that performance would be throttled by way of this iOS feature; and

e.     An order requiring Apple to afford each Affected Phone owner the right to decide for himself or herself whether he or she wants the performance-throttling feature that Apple has forced them to accept without their knowledge or consent.

## II.     JURISDICTION

5.     This Court has subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed classes consist of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and plaintiff, a New Yorker, is a citizen of a state different from the defendant, which is a California corporation.

## III.     VENUE

6.     Venue is proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to plaintiff's claims occurred in this judicial district. Furthermore, Apple's principal place of business is in this judicial district, and it is believed, and therefore alleged, that a substantial amount of the conduct of which plaintiff complains occurred in this judicial district. Further, Apple has marketed, advertised, and sold affected devices within this judicial district. Additionally, the San Jose division of this Court is the proper division for filing given Apple's headquarters in Cupertino, California.

## IV.     PARTIES

**A.     The plaintiff**

7.     Plaintiff John Solak is a resident of Binghamton, New York. He purchased his iPhone 6 approximately two years ago.

CLASS ACTION COMPLAINT                 - 2 -
Case No. 5:18-cv-123
000700-11 555555 V1

8.     At Apple's urging, Mr. Solak dutifully downloaded and installed each iOS update presented to him. These updates have included iOS 10.2.1 and iOS 11.2.  At no time did Apple advise Mr. Solak that installing any of its iOS updates, including these two, would result in throttling the performance of his phone under certain or any conditions.  In fact, to Mr. Solak's recollection, the notices that he received on his device regarding these updates said nothing about performance-throttling.[2]  Nor did Mr. Solak give his consent to any such performance degradations.

9.     Nonetheless, in or about June 2017, Mr. Solak began noticing significant slowdowns of his phone's performance.  It was only in the last week or so that Mr. Solak first learned, thanks to reports in the press, that Apple had intentionally caused this throttling without his knowledge or permission.

## B.    The defendant

10.     Apple, the designer, manufacturer, and vendor of iPhones, and the designer and author of iOS and iOS updates, is a California corporation.  It maintains its headquarters and principal place of business in Cupertino, California. Upon information and belief, Apple's head of software (including iOS engineering), Craig Federighi,[3] maintains his office at, and conducts business from, its Cupertino headquarters.[4]  Also upon information and belief, Apple took all

---

[2] Screenshots of these iOS update notices from Apple, which notices were displayed on Mr. Solak's phone screen and the screens of putative class members, are preserved online.  (*See, e.g.*, https://www.forbes.com/sites/amitchowdhry/2017/01/23/apple-ios-10-2-1-is-now-available-what-is-included-in-the-update/#1a726194488f (screenshot of iOS 10.2.1 notice, stating: "iOS 10.2.1 includes bug fixes and improves the security of your iPhone or iPad.  For information on the security content of Apple software updates, please visit this website: https://support.apple.com/HT201222") (last accessed Jan. 5, 2018); https://www.forbes.com/sites/amitchowdhry/2017/12/02/ios-11-2-features/#20754f5c49ae screenshot of iOS 11.2 notice, stating: "iOS 11.2 introduces Apple Pay Cash to send, request, and receive money from friends and family with Apple Pay.  This update also includes bug fixes and improvements.  For information on the security content of Apple software updates, please visit this website: https://support.apple.com/kb/HT201222") (last accessed Jan. 5, 2018).)

[3] https://www.apple.com/leadership/craig-federighi/ ("Craig Federighi is Apple's senior vice president of Software Engineering, reporting to CEO Tim Cook. Craig oversees the development of iOS, macOS, and Siri. His teams are responsible for delivering the software at the heart of Apple's innovative products, including the user interface, applications and frameworks." (last accessed Jan. 5, 2018).

[4] *See, e.g.*, https://www.macrumors.com/2017/12/01/craig-federighi-face-id-touch-id-email/ (indicating that Mr. Federighi answered an email on behalf of the company via Apple's servers located at its Cupertino, California headquarters) (last accessed Jan. 5, 2018).

decisions and actions complained of herein at or near its corporate headquarters in Cupertino, California, or elsewhere in the state of California.

11.     Apple transacts substantial business throughout California, including by way of designing its products and operating system updates, devising and implementing policies regarding operating system updates, devising and implementing its service and marketing strategies and policies, and dispersing its iOS software updates from or via its California headquarters.  It is believed, and therefore alleged, that substantially all of the misconduct alleged in this complaint occurred in or emanated from California.

## V.     FACTUAL ALLEGATIONS

12.     In or about 2016, reports began to surface of random, unexpected, sudden, and extremely disruptive shutdowns of certain iPhones.  Many such shutdowns seemed to occur when the battery indicator on these iPhones reported that the charge level had reached approximately 30%.[5] Some reports focused on the iPhone 6s.  But other reports, including some citing Chinese consumer authorities and some in certain press outlets, referred to a range of iPhone 6 and 6s devices with serious issues.[6]

13.     Where American consumers were concerned, Apple also focused on the iPhone 6s.  In November 2016 it posted an article to its American website in which it offered a battery replacement program for a limited number of these particular devices. [7]  In that article it stated opaquely: "Apple has determined that a very small number of iPhone 6s devices may unexpectedly shut down. This is not a safety issue and only affects devices within a limited serial number range that were manufactured between September and October 2015."  To reiterate, only those particular phones were eligible to have their batteries replaced free of charge.

---

[5] *See, e.g.*, http://www.businessinsider.com/apple-statement-on-iphone-shutdown-issue-2016-12 (last accessed Jan. 2, 2018).

[6] *See, e.g.*, *id.*; *see also, e.g.*, http://fortune.com/2017/01/25/apple-iphone-6-battery-recall/ (last accessed Jan. 3, 2018).

[7] *See* https://www.apple.com/support/iphone6s-unexpectedshutdown/ (last accessed January 2, 2018).  Apple posted this article to its American website in or about November 2016.

14.     Rather than offering more information to its American consumers, Apple chose instead to offer a bit more detail on its Chinese-language website after Chinese authorities announced investigations of its iPhone products.  In two messages dated December 1 and December 6, 2016, Apple advised Chinese consumers that it had heard of a "limited number of reports of unexpected shutdown with iPhones"; that it had investigated and "found a small number of iPhone 6s devices made in September and October 2015 contained a battery component that was exposed to controlled ambient air longer than it should have been before being assembled into battery packs; and that it was "replacing batteries in affected devices" worldwide.[8]

15.     Apple also revealed to its Chinese customers that "[a] small number of customers outside of the affected range have also reported an unexpected shutdown."[9]  It told them it was gathering more information on the problem.  And it told them:

> We also want our customers to know that an iPhone is actually designed to shut down automatically under certain conditions, such as extremely cold temperature.  To an iPhone user, some of these shutdowns might seem unexpected, but they are designed to protect the device's electronics from low voltage.[10]

It also told that while it was looking for other factors that could "cause an iPhone to shut down unexpectedly," it had not yet found any.[11]

16.     Fast forward to December 2017.  Reports surfaced on December 18, 2017, that a Primate Labs researcher, John Poole, had found evidence that Apple had embedded performance-degrading features into certain iOS updates, likely as a means to prevent shutdowns of Affected Phones.[12]  Mr. Poole's research was spurred by a post the week before from a Reddit poster, Teckfire, which stated in part: "From what I can tell, Apple slows down phones when their battery gets too low, so you can still have a full days charge. This also means your phone might be very slow

---

[8] *See* https://support.apple.com/zh-cn/HT207414 (last accessed Jan. 2, 2017).

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *See* https://www.geekbench.com/blog/2017/12/iphone-performance-and-battery-age/ (last accessed Jan. 3, 2018).

for no discernible reason."[13]  Later, 9TO5Mac reported that "Developer Guilherme Rambo has discovered the software system, powerd (short for power daemon), that Apple put in place in iOS 10.2.1. powerd controls CPU/GPU speed and power. It also responds to thermal pressure and helps iPhones from catching fire."[14]  Mr. Rambo's Twitter post was dated December 18, 2017, the same as Mr. Poole's report.[15]

17.    All of this reporting caused Apple to acknowledge—sort of—that it had embedded a throttling feature into two iOS updates.  As it stated to *TechCrunch* on December 20, 2017:

> Our goal is to deliver the best experience for customers, which includes overall performance and prolonging the life of their devices. Lithium-ion batteries become less capable of supplying peak current demands when in cold conditions, have a low battery charge or as they age over time, which can result in the device unexpectedly shutting down to protect its electronic components.
>
> Last year we released a feature for iPhone 6, iPhone 6s and iPhone SE to smooth out the instantaneous peaks only when needed to prevent the device from unexpectedly shutting down during these conditions. We've now extended that feature to iPhone 7 with iOS 11.2, and plan to add support for other products in the future.[16]

18.    This acknowledgment, of course, caused much gnashing of teeth among Apple consumers.  So about a week later, Apple published an apology letter further acknowledging and explaining its actions.[17]  As the defendant blandly put it:

> About a year ago in iOS 10.2.1, we delivered a software update that improves power management during peak workloads to avoid unexpected shutdowns on iPhone 6, iPhone 6 Plus, iPhone 6s, iPhone 6s Plus, and iPhone SE.  With the update, iPhone dynamically manages the maximum performance of some system components when needed to prevent a shutdown.  While these changes may go unnoticed, in some cases users may experience longer launch times for apps and other reductions in performance.

---

[13] https://pastebin.com/JergYngQ (last accessed Jan. 2, 2018).

[14] https://9to5mac.com/2017/12/18/iphone-battery-performance-issues/ (last accessed Jan. 4, 2018).

[15] https://twitter.com/_inside/status/942847979991523328 (last accessed Jan. 4, 2018).

[16] https://techcrunch.com/2017/12/20/apple-addresses-why-people-are-saying-their-iphones-with-older-batteries-are-running-slower/ (last accessed Jan. 2, 2018).

[17] https://www.apple.com/iphone-battery-and-performance/ (last accessed Jan. 2, 2018).

19.     In a nutshell, then, Apple admitted that it had instituted performance throttling on Affected Phones.   Its stated reason was to prevent shutdowns when a battery's voltage fell to a certain level under three circumstances: "[w]ith a low battery state of charge, a higher chemical age, or colder temperatures."[18]  Implicitly, it also admitted that it had not asked permission from its customers to do this, nor had it informed them previously of exactly what it had done.

20.     Also on December 28, 2017, in its "iPhone Battery and Performance" paper, Apple identified seven ways in which its so-called and hidden "power management" could affect performance of the phones on which it was installed.[19]

21.     Coupled with these explanations and apologies, Apple announced that it would "reduc[e] the price of an out-of-warranty iPhone battery replacement by $50—from $79 to $29—for anyone with an iPhone 5 or later whose battery needs to be replaced" through the end of 2018.[20] Importantly, Apple acknowledged for the first time in its apology letter that replacing an Affected Phone's "chemically aged" battery would do away with the voltage issues that would cause the performance throttling to occur (unless the phone were used in non-standard conditions).[21]

22.     Apple also stated that it was working on an iOS software update, to be issued in early 2018, "with new features that give users more visibility into the health of their iPhone's battery, so they can see for themselves if its conditions is affecting performance."[22]  This is a further admission that Apple had not given iPhone customers key information as to what was causing the performance

_____

[18] *See* https://support.apple.com/en-us/HT208387 (last accessed Jan. 4, 2018).  This is an article entitled "iPhone Battery and Performance" that Apple issued on December 28, 2017, contemporaneously with its apology letter.

[19] *See id.*

[20] *See* https://www.apple.com/iphone-battery-and-performance/.  Later, at least according to certain press reports, it began allowing this discount for all such iPhone battery replacements—not only for those phones "whose battery needs to be replaced" according to its own testing.  (*See, e.g.*, https://techcrunch.com/2018/01/02/you-can-get-that-29-battery-replacement-regardless-of-your-iphones-health/ (last accessed Jan. 4, 2018).)  But its official offer remains unchanged as of the date of this complaint.

[21] *See* https://www.apple.com/iphone-battery-and-performance/ ("Of course, when a chemically aged battery is replaced with a new one, iPhone performance returns to normal when operated in standard conditions.").  Evidently this means in "a low state of charge" or "in a cold temperature environment."  *See* https://support.apple.com/en-us/HT208387.

[22] *See* https://www.apple.com/iphone-battery-and-performance/.

degradations that so many of them, including the plaintiff, were experiencing due to its battery issues and its decision to throttle performance in order to prevent shutdowns.

23.    Apple's subterfuge in installing throttling software, and its lack of candor until forced to explain itself by press reports and customer uproar, undoubtedly resulted in many sales and purchases of new iPhones due to consumers' belief—and Apple sales representatives' urgings—that their phones were essentially obsolete, hence the degradations of performance.[23]  And, no doubt, many owners of Affected Phones bought batteries at $79 while fishing in the dark for a solution to their performance issues.  Plaintiff considered both of these options before Apple finally admitted what was actually happening with his phone, and why.

24.    Whether Apple had good reason to install performance-throttling software on certain iPhone models is debatable to say the least.  Its key competitors Samsung, LG, HTC, and Motorola say that they do not throttle CPU performance in devices with older batteries.[24]

25.    In fact, Apple's decision to engineer and install throttling features without the knowledge or consent of its customers speaks to a design, manufacturing, or marketing flaw, or some combination of these flaws.  Such shutdowns should not be occurring on premium devices in particular.  Perhaps there is a mismatch between Apple's batteries and the hardware they are meant to power.  Or perhaps Apple's insistence on thinner phones and more powerful processors do not jibe with available battery technology—or battery technology for which it was willing to pay.

26.    In any event, Apple had no right to foist this throttling software on customers without their knowledge or consent.  Further, these customers could not reasonably figure out what Apple had done; a reasonable consumer would at most expect his battery life to shorten over time, not that

---

[23] *See* Comments to "Apple Will Replace the Battery in Your iPhone 6 or Later Even if it Passes a Genius Bar Diagnostic Test," dated Jan. 2, 2018 (available at https://www.macrumors.com/2018/01/02/apple-replaces-iphone-batteries-that-pass-tests/ (last accessed Jan. 4, 2018)) (*e.g.*, "Too little too late.  Apple genius denied the iphone [*sic*] 6 (of a family member) the $79 out of warranty battery replacement back in September and suggested a hardware upgrade instead.").

[24] https://www.cultofmac.com/521005/samsung-lg-dont-throttle-phones-like-apple/ (last accessed Jan. 4, 2018); https://www.androidauthority.com/htc-motorola-iphone-throttle-cpu-performance-android-826193/ (last accessed Jan. 4, 2018).

it would lead to degraded performance,[25] and especially not to degraded performance that Apple caused intentionally.

## VI.    CLASS ALLEGATIONS

27.    Plaintiff brings this action pursuant to the provisions of Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), on behalf of himself and the following proposed class:

> All U.S. persons or entities who own or owned an iPhone 6, iPhone 6 Plus, iPhone 6s, iPhone 6s Plus, iPhone SE, iPhone 7, or iPhone 7 Plus, and who installed iOS 10.2.1 or 11.2 on his, her, or its iPhone.

28.    Excluded from the proposed class are Apple, its employees, officers, directors, legal representatives, heirs, successors, subsidiaries and affiliates, and the judicial officers and their immediate family members and associated court staff assigned to this case, as well as all persons who make a timely election to be excluded from the proposed classes.

29.    Certification of plaintiff's claims for classwide treatment is appropriate because plaintiff can prove the elements of his claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

30.    This action meets all applicable standards of Fed. R. Civ. P. 23 for class certification. More specifically, plaintiff can demonstrate:

31.    <u>Numerosity</u>.  The members of the proposed class are so numerous and geographically dispersed that individual joinder of all proposed class members is impracticable.  *See* Fed. R. Civ. P. 23(a)(1).  While plaintiff believes that that there are hundreds of thousands, if not millions, of

---

[25] What's more, blazing fast performance is a feature that Apple regularly touts when marketing its devices.  *See, e.g.*, https://web.archive.org/web/20141001022732/http://www.apple.com/iphone-6/technology ("The all-new A8 chip is our fastest yet. Its CPU and graphics performance are faster than on the A7 chip, even while powering a larger display and incredible new features.  And because it's designed to be so power efficient, the A8 chip can sustain higher performance—so you can play graphics-intensive games or enjoy video at higher frame rates for longer than ever.")  (last accessed Jan. 2, 2018); https://web.archive.org/web/20150926133013/http://www.apple.com:80/iphone-6s/technology/ ("The A9 chip brings a new level of performance and efficiency to iPhone 6s.  Not only a faster experience, but a better one. . . .  It sits at the cutting edge of mobile chips, improving overall CPU performance by up to 70 percent compared to the previous generation. . . .") (last accessed Jan. 2, 2018).

Plaintiff recalls seeing similar if not identical advertising, and being impressed by it, prior to purchasing his iPhone 6.  He looked forward to enjoying that power and speed unimpeded by performance throttling.

members of the proposed class,[26] the precise number of class members is unknown to them, but may be ascertained from Apple's books and records.  Class members may be notified of the pendency of this action by recognized, court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

32.    <u>Commonality and Predominance</u>.  This action involves common questions of law and fact, which predominate over any questions affecting individual class members.  *See* Fed. R. Civ. P. 23(a)(2) and (b)(3).  These include, without limitation:

  a. Whether Apple engaged in the conduct alleged in this complaint;

  b. Whether Apple designed, advertised, marketed, distributed, sold, or otherwise placed Affected Phones into the stream of commerce in the United States;

  c. Whether Apple designed, programmed, manufactured, marketed, and distributed the referenced iOS software updates;

  d. Whether Apple advised owners of Affected Phones (including plaintiff and putative class members) of the throttling features it intentionally included in the referenced iOS software updates when it presented them for installation on affected devices;

  e. Whether Apple obtained real or informed consent from owners of Affected Phones (including plaintiff and putative class members) to install throttling features on their affected devices;

  f. Whether Affected Phones, their batteries, or their operating systems contain marketing, design, or manufacturing defects;

  g. Whether Apple knew about the defect(s), and, if so, for how long;

  h. Whether Apple marketed iPhones as high-performance devices that were both powerful and speedy;

---

[26] *See, e.g.*, https://www.finder.com/iphone-sales-statistics (setting forth year of release of iPhones since the iPhone 4s, as well as the enormous U.S. sales of iPhones per year) (last accessed Jan. 4, 2018).

i.   Whether Apple's conduct, including but not limited to its alleged deceptive conduct, violates California consumer protection statutory or other laws as asserted herein;

j.   Whether plaintiff and members of the proposed class are entitled to damages, as well as punitive, exemplary, or multiple damages, due to Apple's conduct as alleged in this complaint, and if so, in what amounts; and

k.   Whether plaintiff and other putative class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief as requested in this complaint.

33.   <u>Typicality</u>.  Plaintiff's claims are typical of the putative class members' claims because, among other things, all such class members were comparably injured through Apple's wrongful conduct as described above.  *See* Fed. R. Civ. P. 23(a)(3).

34.   <u>Adequacy</u>.  Plaintiff is an adequate proposed class representative because his interests do not conflict with the interests of the other members of the proposed class he seeks to represent; because he has retained counsel competent and experienced in complex class action litigation; and because he intends to prosecute this action vigorously.  The interests of the proposed class will be fairly and adequately protected by plaintiff and his counsel.   *See* Fed. R. Civ. P. 23(a)(4).

35.   <u>Declaratory and Injunctive Relief</u>.  Apple has acted or refused to act on grounds generally applicable to plaintiff and the other members of the proposed class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the proposed class as a whole.  *See* Fed. R. Civ. P. 23(b)(2).

36.   <u>Superiority</u>.  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by plaintiff and putative class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Apple, so it would be impracticable for members of the proposed classes to individually seek redress for Apple's wrongful conduct.  Moreover, even if

class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and it increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. *See* Fed. R. Civ. P. 23(b)(3).

## VII.  CAUSES OF ACTION

### COUNT I

### TRESPASS TO CHATTELS

37.     Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

38.     Plaintiff and members of the proposed class owned or own one or more of the following iPhones: the iPhone 6, iPhone 6 Plus, iPhone 6s, iPhone 6s Plus, iPhone SE, iPhone 7, or iPhone 7 Plus. At Apple's urging, plaintiff and members of the proposed class installed either iOS 10.2.1, 11.2, or both, on their iPhones, without knowing that Apple had secretly included performance-throttling features in each of those iOS updates. Because they were unaware of the inclusion of this secret feature, they did not consent to installation of it on their devices.

39.     Defendant Apple intentionally interfered with, and committed trespass to, plaintiff's and putative class members' property, *i.e.*, their iPhones, by installing performance-throttling software on their phones without their knowledge. To reiterate: because Apple did not inform them of, or seek their consent to installation of, performance-throttling software when presenting them with the iOS 10.2.1 or 11.2 updates, or both of them, plaintiff and the putative class members did not consent to Apple's interference.

40.     Apple's interference was the actual, direct, and proximate cause of injury to the plaintiff and his fellow putative class members because it actually and substantially slowed, and therefore harmed, the functioning of the devices in at least the seven ways that Apple has now

CLASS ACTION COMPLAINT                                 - 12 -
Case No. 5:18-cv-123
000700-11 555555 V1

admitted.[27]  This harm to the functioning of the Affected Phones, which plaintiff and putative class members have experienced, significantly impaired the devices' condition, quality, and value.

41.    Apple's trespass and interference was malicious and oppressive—in order to stave off shutdowns that should not have been occurring in the first place, and without informing plaintiff and putative class members, Apple hid performance-degrading software in iOS updates, and it said nothing about this feature, nor did it obtain the permission of the affected persons to trespass on or interfere with their devices. Apple knew and intended that its conduct would cause injury to plaintiff and members of the putative class, including by way of diminishing the performance of their expensive, premium phones.  Apple thus acted despicably and with conscious disregard of the rights of plaintiff and that putative class.

42.    As a result of Apple's trespass to, and interference with, their devices, plaintiff and the members of the proposed class are entitled to recover the actual damages they suffered in amounts to be determined at trial, as well as punitive damages in an amount that also will be determined at trial.

## COUNT II

### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW
(CAL. BUS. & PROF. CODE § 17200, *et seq.*)

43.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

44.    Plaintiff brings this count on behalf of himself and the proposed class.

45.    California's Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200, *et seq.*, proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

46.    Apple's choices, policies, conduct, and actions were undertaken or performed in, and therefore emanated from, California.

---

[27] *See* https://support.apple.com/en-us/HT208387.

**A.    Unfair prong**

47.    Apple's conduct violates the unfair prong of the UCL in at least the following ways:

a.    Apple systematically installed performance-throttling software on Affected Phones without the knowledge or consent of plaintiff or putative class members.  By doing this, Apple deprived these iPhone owners of the performance which Apple promised them but which it consciously degraded under at least the circumstances it has admitted;

b.    Apple's subterfuge outweighs any potential benefits from its unilateral action; and

c.    Apple chose an unfair, and therefore unlawful, course of action when other, lawful courses were available.  For example, it could and should have given plaintiff and putative class members the right to opt in and out of the throttling feature at their election.

48.    Apple also behaved as alleged in order to gain unfair commercial advantage over its competitors, even if it meant disregarding the rights and expectations of its customers.  Apple's actions reveal that it wanted to deal with its iPhone shutdown issue as quietly as possible, so as not to injure sales or its reputation.  It not only withheld critical information from plaintiff and the putative class, but also from its competitors and the marketplace at large, all to its unfair competitive advantage.

49.    Apple's behavior as alleged herein, which emanated from its headquarters in California, caused harm to the plaintiff and putative class as alleged in this complaint.  Had plaintiff and putative class members known that Apple would engage in this unfair behavior, they would not have purchased their iPhones, or they would not have purchased these Affected Phones at the prices they paid (*i.e.*, they would only have purchased them at lesser prices), and/or they would have purchased less expensive phones.

50.    Accordingly, plaintiff and other putative class members have suffered injury in fact, including lost money or property, as a result of Apple's unfair behavior.

51.     Plaintiff and the putative class seek to enjoin further unfair acts or practices by Apple under CAL. BUS. & PROF. CODE § 17200.

**B.      Fraudulent prong**

52.     Additionally, Apple procured the installation of iOS 10.2.1 and 11.2 by way of false and fraudulent statements and omissions as to the contents of those software updates.  This led to sales of new iPhones and batteries to putative class members who would not have bought them had they known the real truth (*i.e.*, that performance slowdowns were caused by Apple, and that even so, a new battery might suffice to restore the performance of their current phones), and it kept plaintiff and putative class members from seeking full or partial refunds for devices whose performance was intentionally throttled by Apple.

53.     Also, after designing and releasing its performance-throttling software for Affected Phones, it sold such phones to certain customers who were buying phones anew (*i.e.*, not for replacement purposes). In order to sell these phones, it made its usual representations as to the stellar performance that could be expected from these phones, even though it knew that its throttling feature would degrade that peformance under several circumstances.

54.     Accordingly, plaintiff and other putative class members have suffered injury in fact, including lost money or property, as a result of Apple's fraudulent behavior.

55.     Plaintiff and the putative class seek to enjoin further fraudulent acts or practices by Apple under CAL. BUS. & PROF. CODE § 17200

56.     In sum, plaintiff and the putative class ask that this Court enter such orders or judgments as may be necessary to enjoin Apple from continuing its unfair and fraudulent practices as described herein, and to restore to plaintiff and members of the putative class all money that it acquired or retained by way of unfair or fraudulent competition and activities, including restitution and/or restitutionary disgorgement, as provided in CAL. BUS. & PROF. CODE §§ 17203 and 3345, and for such other relief as is requested in this complaint or that is otherwise appropriate.

## COUNT III

### FRAUDULENT MISREPRESENTATION

57.     Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

58.     Plaintiff brings this count on behalf of himself and the proposed class.

59.     Apple made material misrepresentations concerning the content and intended and expected effects of the iOS updates referenced in this complaint, as well as the performance of Affected Phones and their batteries.

60.     More specifically, Apple's representations were false in that they mis-described the contents of these updates.  It told its customers that its iOS updates had only specific positive features, but this was not true, as Apple knew, because iOS 10.2.1 and 11.2 also contained features that intentionally degraded the performance of Affected Phones in at least the seven ways it has now identified, such that these owners thought they needed a new phone or battery when Apple knew better.  Instead, Apple sold members of the putative class new products when they otherwise would not have bought them.

61.     Also, Apple deceived certain putative class members when it sold them new Affected Phones with representations of high levels of performance and speed even though, after the introduction of the complained-of features in iOS 10.2.1, 11.2, or both, it knew that these devices would be subject to performance degradation due to performance-throttling features contained in those iOS updates.  Under these circumstances, its representations as to performance and speed were knowingly false.

62.     Apple behaved in these ways in order to boost or maintain sales of its iPhones, and in order to falsely assure purchasers of the iPhone that Apple is a reputable manufacturer and that its phones are reliable and able to perform as promised.  The false representations were material to consumers because the representations played a significant role in the value of the iPhones they purchased.

63.     Plaintiff and proposed class members read the release notes accompanying the subject iOS updates, which said nothing about the performance-throttling features that Apple had installed in them.  They had no way of knowing that Apple's representations at to the contents of the subject iOS updates were gravely misleading.  Plaintiff and proposed class members did not and could not unravel Apple's deception on their own.

64.     Apple had a duty to ensure the accuracy of release statements it published with respect to its iOS updates, and to ensure the accuracy of performance promises and representations it made in order to induce sales of new phones.  But it did not fulfill these duties, to the detriment of plaintiff and members of the putative class.

65.     Apple actively misrepresented material facts, in whole or in part, to pad and protect its profits and to maintain and burnish its reputation as a premier designer and vendor of phones, which perception would enhance the brand's image and garner Apple more money.  But it did so at the expense of plaintiff and the putative class.

66.     Plaintiff and the putative class were unaware of these material misrepresentations, and they would not have acted as they did if they had known the truth.  Plaintiff's and the putative class members' actions were justified given Apple's misrepresentations.  Apple was in exclusive control of the material facts, and such facts were not known to the public, plaintiff, or the proposed class.

67.     Because of Apple's misrepresentations, plaintiffs and the putative class sustained injury due to the throttling of their phones without their knowledge.  They are entitled to recover full or partial refunds for iPhones or batteries they purchased due to Apple's misrepresentations, or they are entitled to damages for the diminished value of their Affected Phones, which no longer perform as promised and expected due to Apple's behavior as alleged in this complaint.

68.     Accordingly, Apple is liable to plaintiff and the proposed class for damages in an amount to be proven at trial.

69.     Further, Apple's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of plaintiff's and the putative class members' rights and well-being, and as part of efforts to enrich itself in California at the expense of consumers.  Apple's acts

also were done in order to gain commercial advantage over its competitors, and to drive consumers away from consideration of competitor devices as alleged in this complaint. Apple's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT IV**

**QUANTUM MERUIT TO RECOVER SUMS RECEIVED BY UNJUST ENRICHMENT**

70.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

71.    Plaintiff brings this claim on behalf of himself and the proposed class.

72.    In the event that no adequate legal remedy is available, plaintiff brings this count in quasi contract on his behalf and that of his fellow putative class members, in order to pursue restitution based on Apple's unjust enrichment.

73.    Apple has unjustly received and retained monetary benefits from plaintiff and the class, and inequity has resulted.

74.    More specifically, Apple sold plaintiff and putative class members iPhones marketed to have a premium level of performance. These iPhones' prices reflected their promised premium performance. Once Apple consciously throttled their performance as alleged herein, including by way of false inducements to get them to agree to install the iOS updates at issue, the value of these devices to plaintiff and the proposed class dropped. Yet Apple has retained all the funds they paid. Further, Apple has induced sales of new iPhones and batteries due to its throttling that putative class members mis-interpreted as obsolescence. Again, Apple has retained these monetary benefits that it obtained as a consequence of the wrongful practices identified in this complaint.

75.    Thus, all proposed class members conferred a benefit on Apple.

76.    It is inequitable under the circumstances described in this complaint for Apple to retain these benefits.

77.    Plaintiff and the class were not aware of the true facts about the Affected Phones and did not benefit from Apple's conduct.

78.     Apple, on the other hand, knowingly accepted, and has retained, the benefits of its unjust conduct.

79.     As a result of Apple's conduct, the sum of its unjust enrichment should be disgorged as restitution under the theory of quantum meruit or otherwise, in amounts according to proof.

## VIII.   REQUEST FOR RELIEF

WHEREFORE, plaintiff respectfully requests that the Court enter judgment in his favor and that of the proposed class, and against defendant, as follows:

A.     Certification of the proposed nationwide class as requested, including appointment of plaintiff's counsel as class counsel;

B.     Damages, including punitive damages; restitution; penalties; and disgorgement in amounts to be determined at trial;

C.     An order requiring Apple to pay both pre- and post-judgment interest on any amounts awarded;

D.     An award of costs, expenses, and attorneys' fees;

E.     Orders temporarily and then permanently enjoining Apple from continuing the unfair and deceptive business practices alleged in this complaint, in particular the throttling of any Affected Phone without the consent of the phone's owner, and orders effecting the correction or mitigation of the unfair and deceptive practices alleged herein; and

F.     Such other or further relief as may be appropriate.

## IX.     DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all claims so triable.

Dated:  January 5, 2018                    HAGENS BERMAN SOBOL SHAPIRO LLP

By */s/ Shana E. Scarlett*
Shana E. Scarlett (SBN 217895)
715 Hearst Avenue, Suite 202
Berkeley, California  94710
Telephone:  (510) 725-3000
Facsimile:  (510) 725-3001
Email: shanas@hbsslaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Steve W. Berman (*pro hac vice forthcoming*)

Robert F. Lopez, (*pro hac vice forthcoming*)
1918 Eighth Avenue, Suite 3300
Seattle, Washington  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com
Email: robl@hbsslaw.com

*Attorneys for Plaintiff and the Proposed Class*